FILED
at ___ O'clock & ___ min. ___ M
NOV 02 2011
United States Bankruptcy Court
Columbia, South Carolina (37)

ENTERED
NOV 02 2011
D.L.L.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Roy Thinell Cooper,<br><br>　　　　　　　　Debtor(s). | C/A No. 10-01472-JW<br><br>Adv. Pro. No. 11-80045-JW<br><br>Chapter 13<br><br>**ORDER** |
| Roy Thinell Cooper,<br><br>v.<br><br>American General,<br><br>　　　　　　　　Defendant(s). | |

　　　　This matter comes before the Court on the Motion for Summary Judgment filed by American General Financial Services, Inc. ("American General"). American General seeks summary judgment on all of the allegations contained in the Complaint and Amended Complaint filed by Roy Thinell Cooper ("Mr. Cooper"). Mr. Cooper submitted a memorandum in opposition of the Motion, and a hearing was held. Pursuant to Fed. R. Bankr. P. 7056, the parties' filings, the arguments presented at the hearing, and applicable law, this Court makes the following findings of fact and conclusions of law:

### **FINDINGS OF FACT**

　　　　1.　　Mr. Cooper entered into a loan and mortgage agreement (the "Mortgage") with American General on February 9, 2004. The Mortgage was to be paid back over a 20-year term, had an interest rate of 12.97 percent, and was secured by Mr. Cooper's principal residence at 96 Ebony Lane, Andrews, South Carolina (the "Property").

　　　　2.　　On February 1, 2008, American General filed a Lis Pendens, Summons and Complaint in Williamsburg County, South Carolina against Mr. Cooper seeking to enforce its

1

rights under the Mortgage and foreclose on the Property (the "Foreclosure Action"). Mr. Cooper made various counterclaims against American General within the Foreclosure Action and sought to stay the foreclosure.

3. Before a decision was reached in the Foreclosure Action, Mr. Cooper filed a chapter 13 petition on March 1, 2010 (C/A No. 10-01472-JW) (the "Bankruptcy Case"). Consequently, the Foreclosure Action was stayed.

4. A dispute arose within the Bankruptcy Case as to the amount of Mr. Cooper's mortgage arrearages, and Mr. Cooper filed an objection to the claim of American General on June 8, 2010. A hearing was held on the objection on July 29, 2010. At the hearing, it was announced the parties had agreed that the stay would be lifted so that the Foreclosure Action could proceed for the purposes of determining the proper amount of mortgage arrearages to be included in Mr. Cooper's chapter 13 plan and so a ruling could be made on Mr. Cooper's counterclaims. The Court entered a consent order, to which Mr. Cooper, American General, and the chapter 13 trustee all agreed, reflecting this agreement on August 11, 2010.[1]

5. On April 11, 2011, prior to a decision being rendered in the Foreclosure Action, Mr. Cooper filed a complaint (the "Original Complaint") against American General, which gave rise to this adversary proceeding within the Bankruptcy Case. The Complaint first stated that American General violated S.C. Code Ann. § 37–23–40 for failing to obtain written certification from a counselor approved by the State Housing Finance and Development Authority, which is required from lenders of "high-cost" loans as defined by the South Carolina Code. Second, the

---

[1] Mr. Cooper had filed a motion to disallow claims of American General in the Bankruptcy Case on August 17, 2010, on the basis that the consent order entered on August 11, 2010 was obtained fraudulently and that American General filed "improper and fraudulent claims." A hearing was scheduled but later cancelled when the chapter 13 trustee, after conferring with all parties, submitted a letter to the Court indicating that Mr. Cooper agreed and understood that the claims of American General were to be resolved through the August 11, 2010 consent order as well as his confirmed plan, thus resolving his motion.

2

Complaint stated that American General violated the Truth in Lending Act, Regulation Z, Subpart E, sections 226.34–.35 for not providing an escrow account for home insurance. Last, the Complaint stated that American General was not properly crediting Mr. Cooper's mortgage payments to principal and interest.[2]

6. American General filed an answer to the Complaint on April 27, 2011, in which it denied all of the allegations stated in the Complaint.

7. On April 14, 2011, a decision was rendered in the Foreclosure Action. The Special Referee of Williamsburg County granted judgment of foreclosure to American General, denied Mr. Cooper's counterclaims, and determined the amount of prepetition arrearages Mr. Cooper owed on the Mortgage. The decision further stipulated that a foreclosure sale of the Property was not to take place unless the Bankruptcy Court so ordered.

8. On June 1, 2011, a pre-trial hearing was held on the Original Complaint. At the hearing, Mr. Cooper made the additional allegation that American General was in contempt of the Foreclosure Action decision by charging him for mortgage payments that were not in accordance with the Special Referee's order. This Court instructed Mr. Cooper that he was to bring all remaining claims or issues regarding American General by filing an appropriate motion or pleading before June 21, 2011. An order reflecting these instructions was entered on June 1, 2011.

---

[2] As a result of a dispute within the Bankruptcy Case, the Court entered an order in that case regarding the accounting issue after the filing of the Original Complaint. The dispute arose when American General filed a motion for relief from stay on March 29, 2011, on the basis that Mr. Cooper had failed to make his post-confirmation direct mortgage payments. Mr. Cooper objected, alleging that American General was not properly accounting for the payments. On May 5, 2011, the Court held a hearing at which it was determined that Mr. Cooper's payments were not credited correctly to his account. As a result, and upon the agreement of the parties, the Court ordered that American General refund $2,351.97 of interest paid and apply it to Mr. Cooper's principal balance as well as waive interest and late fees for the time period that Mr. Cooper failed to make his post-confirmation payments. This order was entered on May 13, 2011—over a month after Mr. Cooper filed the Original Complaint.

9. Mr. Cooper filed an amended complaint (the "Amended Complaint") on June 15, 2011. The Amended Complaint reiterated the alleged South Carolina Code and Truth in Lending Act violations, but did not allege that American General was improperly crediting Mr. Cooper's mortgage payments. The Amended Complaint also did not allege that American General was in contempt of the Foreclosure Action decision.

10. American General filed an answer to the Amended Complaint on July 11, 2011 in which it denied all of the allegations in the Amended Complaint.

11. American General filed the Motion for Summary Judgment (the "Motion") on September 6, 2011, alleging that there were no facts in dispute and that it was entitled to judgment as a matter of law. American General contended in the Motion that Mr. Cooper's loan was not a "high-cost" loan under the South Carolina Code of Laws and thus § 37–23–40 was not violated. The Motion additionally stated that 12 C.F.R. § 226.34 was inapplicable by its terms to the Mortgage, and that 12 C.F.R. § 226.35 was also inapplicable because it was not enacted at the time the Mortgage was executed. Attached to the Motion as exhibits were copies of the Loan Agreement and Disclosure Statement (the "Loan Agreement"), Mr. Cooper's Application for Loan (the "Loan Application"), and the HUD-1 Uniform Settlement Statement (the "HUD-1").

12. On October 5, 2011, a hearing was held on the Motion. At the hearing, American General restated the arguments it made in the Motion. Mr. Cooper did not dispute the validity of the Loan Agreement, Loan Application, or the HUD-1, nor did Mr. Cooper expressly challenge American General's contention that the Mortgage was not subject to 12 C.F.R. §§ 226.34–.35. Mr. Cooper also recognized the Mortgage proceeds were used to acquire the Property. The only issue Mr. Cooper pursued at the hearing was that the Mortgage was a high-cost loan pursuant to the definition set out in S.C. Code Ann. § 37–23–20(15)(B) because he paid more than 5 percent

in "points and fees"—as defined in § 37–23–20(13)—at or before the Mortgage's closing.[3] The parties relied on the HUD-1 and the Loan Agreement to calculate the total charges Mr. Cooper paid at or prior to closing, and there was no dispute as to the amount or nature of the charges. American General contended that many of the charges Mr. Cooper classified as points and fees were not points and fees as defined by the South Carolina Code. The parties also disputed whether the original Mortgage amount was $35,000.00, as indicated on the HUD-1, or $36,231.00, as indicated on the Loan Agreement.

13. Mr. Cooper, who was a *pro se* litigant throughout this adversary proceeding, has represented himself more competently than the vast majority of *pro se* parties that have appeared before this Court. He was prepared at the October 5, 2011 hearing and appeared well versed in the law for a person without formal legal training.

## CONCLUSIONS OF LAW

Rule 56(c) of the Fed. R. Civ. P., made applicable to adversary proceedings under the Bankruptcy Code by Fed. R. Bankr. P. 7056, provides that a party may move for summary judgment, and that such judgment "shall be rendered forthwith" if the evidence and pleadings "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment should ultimately be granted "against a party who fails to make a showing sufficient to establish the evidence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Dunes Hotel Assocs. v. Hyatt Corp. (In re Dunes Hotel Assocs.), 194 B.R. 967, 976 (Bankr. D.S.C. 1995). "'[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable . . . or is not

---

[3] In addition to failing to make allegations of improper accounting in his Amended Complaint, Mr. Cooper did not pursue this issue at the October 5, 2011 hearing.

5

significantly probative, summary judgment may be granted.'" Glover v. Lockheed Corp., 772 F. Supp. 898, 904 (D.S.C. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). After the party seeking summary judgment has shown that the non-moving party has failed to establish an essential element of a claim and the absence of any genuine issue of material fact, the burden then shifts to the non-moving party to point out specific facts showing that a genuine issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 330–31 (1986). Therefore, once American General has set forth evidence, pleadings, and affidavits to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, unless Mr. Cooper presents evidence of specific facts showing the existence of genuine factual issues for trial, American General is entitled to summary judgment.

## I. Mr. Cooper's First Cause of Action—Violation of Title 37 of the South Carolina Code of Laws

Chapter 23 of Title 37 of the South Carolina Code of Laws imposes certain limitations on lenders of "high-cost" home loans. See S.C. Code Ann. § 37–23–40 (2010).[4] Before making a high-cost loan, a lender is required to obtain written certification from a State Housing Finance and Development Authority approved counselor that the borrower "received counseling on the advisability of the loan transaction and the appropriate loan for the borrower." § 37–23–40(1). Mr. Cooper claims that the Mortgage falls under the definition of a high-cost home loan and that American General never obtained written certification that Mr. Cooper received loan counseling as required by the statute.

Under the South Carolina Code, a high-cost home loan is defined as a loan in which the:

(i) principal amount of the loan does not exceed the conforming loan size limit for a single-family dwelling as established from time to time by the Federal National Mortgage Association;

---

[4] Further references to the South Carolina Code shall be by section number only. All references to Title 12 of the Code of Federal Regulations will be clearly indicated as such.

    (ii)    borrower is a natural person;

    (iii)    debt is incurred by the borrower primarily for personal, family, or household purposes;

    (iv)    loan is secured by either a security interest in a residential manufactured home, as defined in Section 37-1-301(24) which is to be occupied by the borrower as the borrower's principal dwelling, or a mortgage on real estate upon which there is located or there is to be located a structure designed principally for occupancy from one to four families and which is or is to be occupied by the borrower as the borrower's principal dwelling; and

    (v)    terms of the loan exceed one or more of the thresholds as defined in item (15) of this section[.]

§ 37–23–20(9)(a). The parties agree that Title 37 applies in this instance and that the Mortgage fulfills the requirements of § 37–23–20(9)(a)(i)–(iv). However, American General contends that the Mortgage's terms do not exceed either of the thresholds as defined in § 37–23–20(15) and that therefore, the Mortgage is not a high-cost loan as defined by the South Carolina Code.

### a.   The Annual Percentage Rate Threshold

The first of the two thresholds is defined under § 37–23–20(15)(A) ("the APR Test"). The APR Test's threshold rate is surpassed when a first-lien loan's annual percentage rate at consummation "will exceed by more than 8 percentage points . . . the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor." 12 C.F.R. § 226.32(a)(1)(i)[5]; § 37–23–20(15)(A) (incorporating 12 C.F.R. § 226.32 as a guide to determine the appropriate threshold rate).

---

[5] On its face, 12 C.F.R. § 226.32 does not apply to a "residential mortgage transaction," which is defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling." 12 C.F.R. § 226.2(a)(24); see also 12 C.F.R. § 226.32(a)(2) (stating that 12 C.F.R. § 226.32(a)(1) does not apply to a "residential mortgage transaction"). The Mortgage clearly meets this definition. However, the South Carolina Code makes it clear that the APR Test

7

As stated in the Loan Agreement, the Mortgage was consummated on February 9, 2004 and has an annual percentage rate of 12.97 and a term maturity of 20 years. Mr. Cooper argues that because the 20-year yield on Treasury securities on February 9, 2004 was 4.93 percent,[6] the Mortgage is a high cost loan under the South Carolina Code. Mr. Cooper would indeed be correct if 4.93 percent were the correct Treasury rate to apply.[7] However, the correct Treasury yield to apply is the one existing "as of the fifteenth day of the month immediately preceding the month *in which the application for the extension of credit is received.*" 12 C.F.R. § 226.32(a)(1)(i) (emphasis added). The Loan Application states that Mr. Cooper applied for the Mortgage on September 25, 2003. As American General asserted in its Motion, the 20-year Treasury yield on August 15, 2003 was 5.49 percent.[8] Mr. Cooper did not disagree with this assertion. Consequently, the Mortgage's annual percentage rate does not exceed the APR Test's threshold.[9]

### b.     The Points and Fees Threshold

The second high-cost loan threshold is defined under § 37–23–20(15)(B) (the "Points and Fees Test"). The Points and Fees Test provides that a loan is high-cost when the total points and fees paid by the borrower at or before the loan closing exceed "five percent of the total loan amount if the total loan amount is twenty thousand dollars or more." § 37–23–20(15)(B)(i).

---

threshold is applicable "without regard to whether the loan transaction is a 'residential mortgage transaction' as the term . . . is defined in Section 226.2(a)(24) of Title 12 of the Code of Federal Regulations." § 37–23–20(15)(A).
[6] See Daily Treasury Yield Curve Rates, U.S. Dep't of the Treasury, http://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2004 (last visited Oct. 27, 2011).
[7] 4.93 percent added 8 percent equals 12.93 percent, which the Mortgage exceeds by .04 percent.
[8] See Daily Treasury Yield Curve Rates, U.S. Dep't of the Treasury, http://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2003 (last visited Oct. 27, 2011).
[9] Mr. Cooper's annual percentage rate of 12.97 percent is less than 13.49 percent, which is the total of 5.49 and 8 percent.

Section 37–23–20(13) defines "points and fees" as those charges required to be disclosed pursuant to 12 C.F.R §§ 226.4(a)–(b), such as "loan fees,"[10] and those listed in 12 C.F.R. § 226.4(c)(7). See §§ 37–23–20(13)(a)–(b). The charges listed in 12 C.F.R. § 226.4(c)(7) include fees for "title examination" and "abstract of title"; however, these charges are classified as points and fees only if the "lender receives direct or indirect compensation in connection with the charge or the charge is paid to an affiliate of the lender." 12 C.F.R. § 226.4(c)(7)(i); § 37–23–20(13)(b).

Section 37–23–20(13)(f) explicitly excludes certain charges from being classified as points and fees. The excluded charges include "taxes, filing fees, and other charges and fees actually paid or to be paid to public officials for determining the existence of or for perfecting, releasing, or satisfying a security interest" as well as "premiums for insurance against title defects." § 37–23–20(13)(f)(i), (iii). Also excluded from the Points and Fees Test are:

> bona fide and reasonable fees actually paid to a person, other than a lender or an affiliate of the lender . . . who has received no direct or indirect compensation for . . . fees for tax payment services . . . appraisal fees . . . [and] attorney's fees if the borrower has the right to select the attorney . . . ."

§ 37–23–20(13)(f)(ii).

The HUD-1 indicates that Mr. Cooper paid a total of $2,330.00 in various charges either at or before closing. The primary dispute at the hearing was which of the following charges should be classified as points and fees:

| | |
|---|---|
| Attorney's Fees to Barr & Barr, P.A.: | $350.00[11] |
| Loan Discount to American General: | $1,050.00 |
| Appraisal Fee to Data Search: | $400.00 |
| Title Examination to Data Search: | $370.00 |
| Title Insurance to Data Search: | $96.00 |
| Tax Service Fee to ZC Sterling: | $59.00 |

---

[10] 12 C.F.R. § 226.4(b)(3).
[11] The Attorney's Fees were the only fees paid outside of closing.

9

  Recording Fees to the Government:   $5.00

  Mr. Cooper argues that this entire $2,330.00, save for the Recording Fees, should be classified as points and fees. However, many of the aforementioned charges in addition to the Recording Fees are excluded from the Points and Fees Test.

  Mr. Cooper is correct to exclude the $5.00 Recording Fee from the Points and Fees Test. Section 37–23–20(13)(f)(i) expressly states that fees to government officials for perfecting a security interest do not constitute points and fees. Also explicitly excluded from the Points and Fees Test are "premiums for insurance against title defects"; thus the $96.00 Title Insurance Fee to Data Search is also excluded. See § 37–23–20(13)(f)(iii).

  The $400.00 Appraisal Fee and $370.00 Title Examination Fee paid to Data Search and the $59.00 Tax Service Fee paid to ZC Sterling may all be excluded if the fees were not paid directly or indirectly to American General or an affiliate of American General. See § 37–23–20(13)(b), (f)(ii); 12 C.F.R. § 226.4(c)(7). Mr. Cooper never contended that any fees paid to Data Search or ZC Sterling were indirectly paid back to American General, or that either of these entities were affiliates of American General. Thus, these fees can properly be excluded from the Points and Fees Test.

  The Attorney's Fees are also to be excluded from the Points and Fees Test pursuant to § 37–23–20(f)(ii) if the closing agent, Barr and Barr P.C., is not an affiliate of American General, did not pay American General directly or indirectly any of the monies received, and if Mr. Cooper had the right to select the attorney. Mr. Cooper never contended that Barr and Barr, P.C. was an affiliate of American General or that Barr and Barr, P.C. compensated American General directly or indirectly for the Attorney's Fees. Additionally, Mr. Cooper never argued

that he was not allowed to select the attorney for his closing. Accordingly, this Court finds that the Attorney's Fees are to be excluded from the Points and Fees Test.

The only remaining charge is the $1,050.00 Loan Discount paid to American General. Section 37–23–20(13)(a) includes in the Points and Fees Test "items required to be disclosed pursuant to Section[] . . . 226.4(b) of Title 12 of the Code of Federal Regulations." Under 12 C.F.R. § 226.4(b)(3), "[p]oints, loan fees, assumption fees, finder's fees, and similar charges" are all required to be disclosed. The Loan Discount appears to clearly come within the ambit of this definition, and accordingly, is to be included in the Points and Fees Test.

Upon applying these classifications, this Court finds that the Mortgage is not a high-cost loan under the Points and Fees Test. While the parties disagree as to the proper amount to use for determining whether the threshold was surpassed, their disagreement has no bearing on the outcome. Mr. Cooper contends that the Mortgage is for $36,231.00, which is stated on the face of the Loan Agreement, whereas American General argues that the amount is $35,000.00, which is stated as the amount borrowed on the HUD-1.[12] Using the figure from the HUD-1, which is more favorable to Mr. Cooper since it lowers the Points and Fees Test threshold, the Mortgage would qualify as a high-cost loan if Mr. Cooper paid more than $1,750.00 in points and fees at or before closing.[13]

However, only the $1,050.00 Loan Discount is to be considered in the Points and Fees Test, and this amount is below the 5 percent threshold. Even assuming, *arguendo*, that the Attorney's Fees cannot be excluded from the Points and Fees Test because Mr. Cooper was not given the right to select the attorney, Mr. Cooper's mortgage would still not be classified as a

---

[12] At the hearing, Mr. Cooper recognized that using the greater amount was unfavorable to his case since it raises the Points and Fees Test threshold, yet remained firm in his belief that the higher figure was the actual amount borrowed.

[13] 5 percent of $36,000.00 equals $1,750.00.

high-cost loan. The Attorney's Fees combined with the Loan Discount Fee still do not total 5 percent of the HUD-1 loan amount,[14] and thus do not surpass the Points and Fees Test threshold.

As a result of these findings, this Court concludes that the Mortgage is not a high-cost loan under the APR Test or the Points and Fees Test. American General was therefore under no duty to obtain written certification that Mr. Cooper received counseling on the appropriateness of the Mortgage. Accordingly, Mr. Cooper's claim for violation of Title 37, Chapter 23 of the South Carolina Code fails as a matter of law.

II. **Mr. Cooper's Second Cause of Action—Violation of the Truth in Lending Act, Regulation Z, Subpart E, Section 226.34.**

As a second cause of action, Mr. Cooper alleges that American General violated 12 C.F.R. § 226.34,[15] by failing to escrow for property taxes and insurance. However, it is unclear what subsection 12 of C.F.R. § 226.34 Mr. Cooper is relying upon, as the section imposes no affirmative requirement on a lender to escrow taxes and insurance. Regardless, Mr. Cooper's claim fails because 12 C.F.R. § 226.34 does not apply to the Mortgage.

Section 226.34(a) of Title 12 of the Code of Federal Regulations only applies to "loans subject to § 226.32." The latter section states that it does not apply to "a residential mortgage transaction," which is defined in 12 C.F.R. § 226.2(a)(24)[16] as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling." It is an uncontroverted fact that the Property is Mr. Cooper's principal dwelling and that American

---

[14] Combining the Attorney's Fees with the Loan Discount Fee provides a total of $1,400.00, which is less than 5 percent of $35,000.00.
[15] Regulation Z, codified at 12 C.F.R. § 226, codifies the Truth in Lending Act, 15 U.S.C. § 1601 et seq.
[16] 12 C.F.R. § 226.2 falls under the Truth in Lending Act, Regulation Z, Subpart A, and thus the section's definition of "residential mortgage transaction" applies throughout the Act.

General retained the Mortgage on the Property to finance its acquisition.[17] Therefore, because the Mortgage falls within this definition, 12 C.F.R. § 226.34 is not applicable and Mr. Cooper's claim under this section fails as a matter of law.

### III. Mr. Cooper's Third Cause of Action—Violation of the Truth in Lending Act, Regulation Z, Subpart E, Section 226.35.

As a final cause of action, Mr. Cooper contends that American General violated 12 C.F.R. § 226.35(b)(3), which requires lenders of "higher-priced mortgage loans" to establish an escrow account for property taxes and insurance before extending credit secured by a loan on a principal dwelling. However, this regulation did not go into effect until April 1, 2010. See Truth in Lending Act, 73 Fed. Reg. 44,522, 44,522 (July 30, 2008) (to be codified at 12 C.F.R. pt. 226) (amending Regulation Z and stating "[t]his final rule is effective on October 1, 2009, except for § 226.35(b)(3)) which is effective on April 1, 2010."). Mr. Cooper's loan was consummated over six years prior on February 9, 2004. Given the language used in the Federal Register and settled principles regarding when laws apply retroactively, this Court finds no reason to conclude that 12 C.F.R. § 226.35(b)(3) should apply retroactively to the Mortgage.[18] As a result, Mr. Cooper's claim under the statute fails as a matter of law.

### CONCLUSION

Based on the foregoing, this Court concludes that American General is entitled to judgment as a matter of law on all of Mr. Cooper's claims for relief. Therefore, American General's Motion for Summary judgment is granted.

---

[17] Mr. Cooper expressly acknowledged this fact at the hearing.
[18] As stated by the United States Supreme Court, the determination of whether a statute applies retroactively "should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" Martin v. Hadix, 527 U.S. 343, 357–58 (1999) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 270 (1994)).

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
November 2, 2011